OPINION
{¶ 1} Nicholas Pappas Sr., the natural father of Nicholas Pappas, Jr., a minor child, appeals a judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, which terminated his parental rights and gave permanent custody of the child to Stark County Department of Job and Family Services. Appellant assigns a single error to the trial court:
 {¶ 2} "I. The judgment of the trial court that the best interests of nicholas pappas jr would be served byhe granting of permanent custody was against the manifest weight and sufficiency of the evidence."
 {¶ 3} The trial court made findings of fact regarding whether the child can be placed or should be placed with either parent at this time or in the foreseeable future, and findings regarding the best interest of the child. The court also made conclusions of law in its judgment entry.
 {¶ 4} The trial court found the minor child was born on September 16, 1996, and was eight years old at the time of the hearing. On December 24, 2002, JFS filed a complaint alleging the child was dependent and neglected. On December 26, 2002, both parents stipulated there was probable cause for Nicholas to be placed outside the home, and the court placed the child in the emergency temporary custody of JFS. On March 17, 2003, the father stipulated to dependency, and after taking evidence as to the mother, the court found the child was a dependent and awarded temporary custody to JFS. The trial court adopted the case plan the parties had developed to reunify the family. During the pendency of the case, the trial court held six month review hearings on the parties' progress. On November 17, 2004, the court extended temporary custody to June 24, 2004. The court later extended temporary custody to JFS until December 24, 2004. The court found the child has been in the custody of JFS for twelve or more of the last twenty-two consecutive months.
 {¶ 5} From these findings of fact, the trial court concluded by clear and convincing evidence the minor child cannot and/or should not be placed with either parent at this time or in the foreseeable future. The court found the parents had committed actions showing an unwillingness to provide an adequate permanent home for the child, and were unwilling to provide food, shelter, clothing, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse, or physical, emotional, or mental neglect.
 {¶ 6} The trial court found the agency had made reasonable efforts to assist the parents to remedy the concern which had originally caused the child to be removed from the home. Despite the agency's reasonable efforts, the parents had failed continuously and repeatedly to substantially remedy the conditions which caused the child to be placed outside the home. The court found despite reasonable efforts, JFS had been unable to locate a suitable relative placement for the child, and there was a reasonable probability the child could be adopted, which would positively benefit the child.
 {¶ 7} Appellant does not assign any error the above findings of fact and conclusions of law.
 {¶ 8} The trial court made findings of fact and conclusions of law with regard to the best interest of the child. The court found the child is on medication for ADHD. The child had previously been diagnosed with asthma, but did not require treatment or medication since being removed from his parents' home. Although the child had been in the home of his maternal aunt during the pendency of the case, she does not wish to adopt Nicholas.
 {¶ 9} The trial court found the mother has on-going physical and mental health problems which prevent her from properly caring for her son. Her mental health issues include past suicide attempts, while her physical health issues are exacerbated by extreme obesity which prevents her from walking unassisted and does not allow her to perform routine basic tasks of daily care for herself. Her condition causes open wounds which necessitate home nursing care. The court found the parents expose their son to inappropriate home movies, and the mother discusses both parents' medical conditions with him, and makes inappropriate statements to him despite numerous admonitions from counselors that this behavior causes harm to the child.
 {¶ 10} The court found the mother exhibits no or poor boundaries during visits with the child, which is substantiated by the case worker's testimony and the guardian ad litem's report. The appellant father has past issues with substance abuse. He is extremely passive and does nothing to intervene on behalf of his son.
 {¶ 11} The court found Nicholas does not have a strong bond with his parents, and what bond does exist was described by the case worker as "strange" and unhealthy. Nicholas has no problems separating after visits with his parents and was more worried about going home to take care of his parents than going home to be with them.
 {¶ 12} The child has made progress in speech, interaction with people, and academic skills while in temporary custody. The child now functions at or above grade level academically. When JFS first took temporary custody of the child, his speech was difficult to understand, he was aggressive and acting out behaviorally, and functioned below grade level.
 {¶ 13} The court took evidence from Donald Kissinger, an expert witness in the field of psychology. Mr. Kissinger reported the child had an "emotional disconnect" from the parents and very little bond with his parents. The psychologist described Nicholas as pre-occupied with his parents' health problems and as being their caregiver instead of their child. Mr. Kissinger described Nicholas' nightmares in which he fears Jason or Freddie Kruger is going to get him, which is attributable to watching horror movies with his parents. Mr. Kissinger recommended Nicholas be in a stable, loving home with ageappropriate boundaries where he can be a child without being exposed to adult issues and inappropriate activities.
 {¶ 14} The nurse and health aide testified regarding their role in appellant's care, but had not witnessed any interaction between either parent and the child.
 {¶ 15} The court found that another maternal relative who indicated a willingness to care for the child had a past history with JFS, which the court apparently found made him unsuitable as custodian. The relative indicated he had not discussed caring for the child with his spouse, who suffers from a mental condition.
 {¶ 16} The trial court concluded it was in the best interest of the child to grant permanent custody to JFS, because Nicholas deserves to have permanency in his life and should not have to wait indefinitely for his parents to demonstrate the ability to prevent exposing him to emotional harm. The court further found it was not in the child's best interest to extend the temporary custody to JFS in order to allow the parents more time to work on the case plan. The court found the evidence demonstrated the parents will not be able to remedy the initial problems in the case at any time within the foreseeable future. The court specifically found the mother's current physical and mental condition prevents her from providing for the child's basic needs at any time in the foreseeable future. The court concluded that JFS should receive permanent custody of the child so he can be adopted in a stable, permanent, loving home.
 {¶ 17} Appellant challenges the court's finding that the best interest of the child is served by the granting of permanent custody as against the manifest weight and sufficiency of the evidence.
 {¶ 18} The right to raise a child is an essential basic civil right,In Re: Hayes (1997), 79 Ohio St. 3d 46. Courts have described the permanent termination of parental rights as the family law equivalent of the death penalty in a criminal case, see, e.g., In Re: Smith (1991),77 Ohio App. 3d 1. Thus, a trial court should not terminate parental rights unless there is clear and convincing evidence presented.
 {¶ 19} R.C. 2151.414 sets forth some relevant factors which the court should consider in determining the best interest of the child:
 {¶ 20} The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 21} The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 22} The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 23} The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 24} Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 25} The goal of the trial court is to fashion a disposition which is in the best interest of the child, In Re: Baby Girl Baxter (1985),17 Ohio St. 3d 229. Our standard of reviewing a trial court's decision in a permanent custody case is to determine whether the court had clear and convincing evidence to make the adjudication it did, In Re: Hiatt
(1993), 86 Ohio App. 3d 716. The clear and convincing standard is a higher degree of proof than the preponderance of the evidence standard which is generally used in civil cases, but it is less stringent than the "beyond a reasonable doubt" standard applied in criminal cases, State v.Schiebel (1990), 55 Ohio St. 3d 71. This court may not reverse the trial court's judgment if it finds there is sufficient evidence in the record to satisfy the clear and convincing standard, In Re: Wise (1994),96 Ohio App. 3d 619. This means we may not substitute our judgment for that of the trial court if there is clear and credible evidence supporting the trial court's factual findings, see, e.g., C.E. MorrisCompany v. Foley Construction Company (1978), 54 Ohio St. 2d 279, In Re:Baby Girl Doe, 149 Ohio App. 3d 717, 2002-Ohio-4470. R.C. 2151.414 is written broadly, and the trial court is not limited to the factors listed in the statute, but must make a fully informed decision, In Re: Awkal
(1985), 95 Ohio App. 3d 309. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record,Miller v. Miller (1988), 37 Ohio St. 3d 71.
 {¶ 26} In the case at bar, the trial court found the minor child has been in the custody of the JFS for twelve or more of the last 22 consecutive months. R.C. 2151.414 (B) list this as one of the reasons a court may grant permanent custody to an agency such as JFS. The trial court considered this factor and other factors as well.
 {¶ 27} First, appellant suggests the progress the child has both physically and developmentally could be explained by the mere passage of time and the child's maturation.
 {¶ 28} Appellant also points out the case worker testified she believed the appellant father would be appropriate if the mother were not present. The appellant is aware of when the mother is being inappropriate, but is too passive to intervene and make her stop. The case worker from JFS testified it was possible the child could be reunified with the appellant if he were to separate from the mother. Appellant suggests if there is one person in the home who can adequately care for the child, then permanent custody should not be granted. We do not agree. A parent may be found unfit if he or she lacks the skills necessary to protect the child from physical or emotional harm from people or situations.
 {¶ 29} The trial court found the father was unable to intervene on behalf of the child. This finding is supported by clear and convincing evidence in the record, and this court may not substitute our judgment for that of the trial court.
 {¶ 30} Finally, appellant takes issue with the case worker's description of the interaction between the parents and the child as not good or appropriate. Appellant suggests problems of this sort should be worked out in a group setting, with the child back in his home with on-going support to assist the parents. A case worker from JFS testified the agency does have services available to work in the home with the parents and child to maintain a therapeutic environment, but there was never a time when the agency felt they had progressed to the point where any of these services could be implemented.
 {¶ 31} Appellant urges he was never informed that if he separated from the mother he would be able to care for his son. Appellant points out the mother has made efforts to improve her situation. Appellant argues if the court would make a Permanent Placement Living Arrangement with the maternal aunt, the family relationships would be preserved.
 {¶ 32} The trial court found it was in the child's best interest to be adopted into a legally secure, loving and stable home. The court found this child deserves to have permanence in his life now, rather than having to wait indefinitely for the parents to demonstrate they can prevent exposing him to emotional harm. We have reviewed the record, and it contains substantial and credible evidence supporting each of the trial court's findings of fact. We find the trial court's decision regarding the best interest of the child is supported by clear and convincing evidence.
 {¶ 33} The assignment of error is overruled.
 {¶ 34} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed. Costs to appellant.